IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL SCOTT GRAF and PAULA GRAF, | ) |
| | ) CIVIL ACTION NO. |
| Plaintiffs, | ) |
| | )   11-00064-CB |
| v. | ) |
| ROBERT LANIER MORGAN; FOREST PRODUCTS TRANSPORTATION, LLC; ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER**

This matter is before the Court on a motion for partial summary judgment filed by defendants Robert Morgan and Forest Products Transportation, LLC. (Doc. 47.) The Defendants seek summary judgment as Plaintiffs' claims for wantonness (Count II) and negligent entrustment (Count III). Plaintiffs have filed a response stating that they "will not offer any opposition to Defendants' [m]otion." (Doc. 55.) Viewing the undisputed facts in light of the applicable law, the Court finds that Defendants are entitled to summary judgment on Counts Two and Three.

**Findings of Fact[1]**

This case arises out of an October 16, 2010 accident (the "Accident") that occurred in Baldwin County, Alabama on "the Bayway," an elevated two-lane portion of Interstate 10 (I-10)

---

[1] As the law requires, the facts, and all inferences arising from them, are viewed forth in the light most favorable to the non-moving party. *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1182 (11th Cir. 1997). Moreover, the "facts" on which the Court's summary judgment order is based are merely those presented by the parties thus far that are relevant to the issues presented. These, of course, may not be the actual facts adduced at trial. *Id.*

West crossing Mobile Bay.  Complaint (Doc. 1-1, pp. 5-12) at 2-3 ¶¶ 7, 11 & n.1.  At the time of the Accident, weather conditions were favorable and visibility was clear.  Ex. 2 at 20-21.  The speed limit on the Bayway is 65 mph.  *Id*. at 146.

The Complaint alleges that Defendant Morgan, while operating a tractor-trailer in the course of his employment with Defendant Forest Products in the right lane of I-10 West, "approached another small vehicle in front of his semi-truck" and "improperly and without notice or warning changed lanes to avoid an accident with the vehicle in front of him."  Complaint at 1-3 ¶¶  4, 8, 3¶ 9.  Plaintiff claims that immediately prior to the accident he was traveling somewhere between 65 and 72 miles per hour with his cruise control in the left (fast) lane.  Ex. 1 at 61.  He was unable to estimate Morgan's actual speed, but was certain Morgan was "moving slower than [Plaintiff]."  *Id*. at 61-62.  Morgan confirmed this speed disparity.  He decelerated to 65 mph prior to reaching the Bayway and was traveling at that speed in the right lane when he approached two slower moving vehicles in front of him that were traveling "[a] pretty good bit under the speed limit."  Ex. 2 at 16-18, 21, 149[2]

When Morgan decided to move into the left lane to pass these slower vehicles, he was not at any risk of a collision.  *Id.* at 152.  Rather, based on the speed at which he was traveling in the right lane and his distance behind that slower vehicle, Morgan "ha[d] plenty of time that [he] could have stopped if [he] needed to" and "wouldn't have run into the back of the vehicles ahead of [him]."  *Id.* at 21-23, 152, 154-55.  To determine that he could safely move into the left lane, Morgan first looked in his rear view mirror and out his driver side window, from which he concluded that the coast was "completely clear."  *Id.* at 25-26.  Because his tractor trailer blocked the view of drivers of "cars on

---

[2] Although Plaintiff could only offer a range as to his speed and his actual speed is in dispute, it is undisputed that Morgan was traveling at the 65 mph speed limit and that Plaintiff was traveling faster than Morgan.  It necessarily follows that Plaintiff was speeding.  Defendants expect their disclosed expert to testify that Plaintiff was traveling at least 11 mph faster than Morgan at the point of impact.  *See* Ex. 7, p. 3.

the right lane directly behind [him]," Morgan then "tapped" his brakes as a warning to these drivers to be alert, specifically "to let them know, 'If I change lanes, there's – there's something up here ahead that you can't see.'". *Id*. at 25-26, 38, 149-52, 169-70, 176-77.

Morgan thereafter engaged his turn signal and looked in his rear view mirror, at which time he observed Plaintiff's vehicle further back in the left lane." *Id*. at 152-54.  Also while looking in the mirror, Morgan observed Plaintiff's flashing headlights, which he "t[ook] to mean" that Plaintiff had seen his tractor-trailer and was "let[ting him] know it's okay, come on over." *Id*. at 153-54.

Morgan then looked forward to confirm the location of the slower vehicles in front of him, after which he began to move into the left lane, absent "any concerns about being able to make safe lane change." *Id*. at 26, 154.  If he'd had any safety concerns, Morgan would not have made the lane change. *Id.* at 153-54.  Morgan changed lanes without ever dropping below 60 mph and immediately began to accelerate back to 65 mph. *Id*. at 38-39.  Morgan's speed had returned close to 65 mph when Plaintiff rear-ended his tractor-trailer. *Id*. at 158.

Plaintiff saw Morgan's turn signal immediately before Morgan began a lane change, after which he "noticed the cab of the 18-wheeler turned sharply into the left-hand lane." Ex. 1 at 52-53, 67.  At that time, Plaintiff was behind Morgan in the left lane of the Bayway and was in the process of passing him in his 2002 Jeep Cherokee.  Complaint at 2 ¶¶ 8, 10; Ex. 1 at 69.  Plaintiff was still behind Morgan at impact, having rear-ended Morgan's trailer.  Ex. 1 at 69.

Following the lane change, Plaintiff collided with Morgan's tractor-trailer "through no fault of his own," causing his vehicle to enter a skid and ultimately collide into a concrete wall. Complaint at 2 ¶ 7, 3 ¶¶ 10-11.  Plaintiff "was not able to stop before [Morgan's] truck came into [his] lane." Ex. 1 at 74.  As a proximate result of the Accident, Plaintiff alleges that he suffered a variety of personal injuries.  Complaint at 3 ¶ 15, 4¶ 18.

In his December 31, 2010 Complaint, Plaintiff brings claims for Negligence (Count I) and Wantonness (Count II) against Defendant Morgan relating to his operation of a tractor-trailer, for

which he seeks to hold Defendant Forest Products vicariously liable on a theory of Agency (Count IV).  *See id*.  Counts, I, II & IV.  He further claims that Defendant Forest Products is directly liable to him based on a theory of Negligent Entrustment (Count III), *see id*., Count III, specifically alleging it allowed Defendant Morgan to operate its tractor-trailer when it "knew or should have known that Morgan was incompetent, reckless, inexperienced, heedless or otherwise careless or incapacitated to operate a motor vehicle." *Id*. at 5 ¶ 21.[3]

Morgan has been a professional truck driver for 12 years and has worked as a driver for Defendant Forest Products for 10 years. Ex. 2 at 25.  Morgan possessed a valid Commercial Driver's License (CDL) at the time of the Accident , which he previously obtained after taking a training course and passing a test. *Id*. at 92.  As part of his employment with Forest Products, Morgan attended quarterly safety meetings. *Id.* at 90.  He also received a copy of Forest Product's Company handbook, a copy of which he kept in his truck. *Id*. at 108.  The handbook sets forth Forest Product's expectation that its employees "take every reasonable measure to avoid involvement in an accident," a policy on which Plaintiff received instruction. *Id*. at 116.

Prior to the Accident, Morgan was rear-ended by another truck driver on an interstate some three years ago, but was not at fault for that collision and was not at fault for any other motor vehicle collisions as a truck driver. *Id*. at 58, 139-40.  He has never previously been sued. *Id*. at 58, 137-40.  In his 12 years as a truck driver, Morgan has received only 4 minor citations, none of which relate to change lanes and none resulted from a motor vehicle collision. *Id.* at 134-37.  More than 30 years ago, when Morgan  was a teen, he received a DUI but has not otherwise been arrested. *Id*. at 137-

---

[3] Although Plaintiff's wife Paula Graf is also named plaintiff in this lawsuit, she brings only a claim for loss of consortium, *see* Complaint, Count V, which is an entirely derivative claim under applicable Alabama law.  Defendants therefore limit this motion to substantive claims of Plaintiff Michael Scott Graf as to which no jury question exists.

38. At the time of the Accident, Morgan was not impaired and was not using a mobile telephone. *Id.* at 51-143; Ex. 3 at 10.

On May 20, 2011, Defendants served interrogatories on Plaintiff requesting him to answer the following questions.

> 8. Please state each and every fact and argument which supports your claim that Defendants were negligent.
>
> 9. Please state each and every fact and argument which supports your claim that Defendants were wanton.
>
> 10. Please state each and every fact and argument which supports your claim that Defendants negligently entrusted the tractor trailer to Robert Morgan.

*See* Ex. 4, p. 6.

Plaintiff's sworn interrogatory answers dated June 28, 2011 provide a substantive response only as to interrogatory 8, offering as evidence of negligence, in their entirety, that Defendant Morgan "improperly and without notice or warning changed lanes and collided with my vehicle." *See* Ex. 5, p. 4 at Answer 8. Plaintiff has failed to provide substantive answers.

There is no evidence that Morgan possessed an incompetency that Forest Products knew or should have known that proximately caused the Accident. Nor is there any evidence that Morgan, at the time of the Accident, (a) was disqualified from driving a tractor-trailer, (b) was in violation of any federal Motor Carrier rule or regulation, (c) was fatigued, or (d) perceived that changing lanes involved any risk of a collision.

**Conclusions of Law**

Under Fed. R. Civ. P. 56, "[a] party is entitled to summary judgment if, after an adequate time for discovery has passed, it can be demonstrated that no genuine issue of material fact exists and it is entitled to judgment as a matter of law." *Am. Fed. of Labor & Congress of Indus. Orgs. v. City of Miami, FL,* 637 F.3d 1178, 1186 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "No genuine issue of material fact exists if a party has failed to 'make a showing

sufficient to establish the existence of an element. . . on which that party will bear the burden of proof at trial.'" *Id*. at 1186-87 (quoting *Celotex*, 477 U.S. at 322). Accordingly, "[w]hen there is a 'complete failure of proof concerning an essential element on the nonmoving party's case,' the motion for summary judgment should be granted." *Id*. at 1186-87 (quoting *Celotex*, 477 U.S. at 322-24). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

To prevail on his claim for Wantonness in Count Two Plaintiff must prove that Defendant Morgan consciously committed a wrongful act or omission, in "reckless or conscious disregard of the rights or safety of others," Ala. Code § 6-11-20(b)(3), 'while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007). A rebuttable presumption exists that a defendant motor vehicle operator does not act or fail to act "consciously" when doing so involves "the risk of injury to [the defendant] himself" that is "as real as any risk of injury to the plaintiffs." *Id.*

No genuine issue of fact exists as to whether Defendant Morgan lacked the requisite "conscious" mental state necessary for his conduct to be wanton. No genuine issue of fact exists as to whether Defendant Morgan is entitled to the benefit of the rebuttable presumption established by *Ex parte Essary*, which stands unrebutted. Accordingly, Defendants are entitled to judgment as a matter of law against Plaintiff as to Count Two.

To prevail on his claim for Negligent Entrustment in Count Three, Plaintiff must prove (1) that Defendant Forest Products entrusted its motor vehicle to Defendant Morgan; (2) that Defendant Morgan is "incompetent"; (3) that Defendant Forest Products had "knowledge that [Defendant Morgan] is incompetent; (4) proximate cause; and (5) damages. *Edwards v. Valentine*, 926 So.2d 315, 320 (Ala. 2005). No genuine issue of fact exists as to whether Defendant Morgan was

incompetent at the time of the underlying Accident.  No genuine issue of fact exists as to whether Defendant Forest Products lacked knowledge of Defendant Morgan's incompetence.  No genuine issue of fact exists as to whether Defendant Forest Products' knowledge of Defendant Morgan's incompetence was the proximate cause of any compensable injury.  Accordingly, Defendants are entitled to judgment as a matter of law against Plaintiff as to Count Three.

**Conclusion**

Based on the foregoing, Defendants' motion for summary judgment as to Counts Two and Three of the Complaint is hereby **GRANTED**.

**DONE** and **ORDERED** this the 10th day of January, 2012.

s/*Charles R. Butler, Jr.*
**Senior United States District Judge**